Order, Supreme Court, Bronx County (Mary Ann BriganttiHughes, J.), entered May 31, 2013, which, in this hybrid CPLR article 78/declaratory judgment proceeding, denied the petition challenging respondent New York City Industrial Development Agency’s (IDA) decision to provide tax subsidies and financial assistance to respondent Fresh Direct LLC for the purposes of relocating its operation to the Harlem River Yards (HRY) in the Bronx without requiring a supplemental environmental impact study, dismissed the remaining causes of action, and dismissed the petition, unanimously modified, on the law, to the extent of declaring that IDA’s issuance of a negative declaration did not violate the New York State Environmental Quality Review Act (SEQRA), was not arbitrary and capricious, and was not an abuse of discretion, and otherwise affirmed, without costs.
In 1982, respondent New York State Department of Transportation (DOT) acquired the HRY, a 96-acre waterfront industrial property located in the Port Morris area of the South Bronx. In 1990, Harlem River Yards Ventures, Inc. (HRYV) was selected to develop the HRY as an industrial park that included warehousing, manufacturing, and intermodal rail facilities, and in 1991, HRYV entered a 99-year lease with DOT.
DOT then retained TAM Consultants to conduct an environmental review, pursuant to SEQRA.[1] In December 1993, TAM submitted its Final Environmental Impact Statement (1993 FEIS) reviewing HRYV’s Land Use Plan (HRYV Land Use Plan), which contemplated construction of, among other things, an intermodal terminal, a solid waste transfer station, and various *608 dry and refrigerated warehouses (including the New York Wholesale Flower Market). On May 13, 1994, DOT issued its Record of Decision approving the HRYV Land Use Plan based on the findings of the 1993 FEIS, which examined potential impacts on land use and zoning, urban design, socioeconomic conditions, community resources, cultural and archeological resources, traffic and transportation, air quality, noise, infrastructure, natural resources, and hazardous materials.
Following DOT’S approval of the Land Use Plan, certain infrastructure improvements relating to the intermodal terminal (tracks and concrete pads) and the solid waste transfer station were constructed on the western portion of HRY, but due to various factors (mainly lack of commercial interest), efforts to bring intermodal rail use to HRY were frustrated. At the same time, certain industrial and manufacturing companies sought to enter into sub-leases to construct new facilities at HRY. For example, in 1998, the Land Use Plan was modified, and IDA approved financial incentives to allow the installation of a New York Post printing and distribution facility, and in 2006, IDA approved a Federal Express distribution facility, both located in the area approved for the proposed recycling plant.[2] Both were the subject of SEQRA reviews by IDA as the lead agency for the environmental reviews. The SEQRA reviews resulted in “Negative Declarations” stating that no Supplemental Environmental Impact Statements (SEIS) were required.
On January 25, 2012, Fresh Direct, LLC, an on-line food and grocery retailer,[3] then located in Long Island City, Queens, submitted an application to IDA for financial incentives to enable a relocation to HRY. Fresh Direct proposed the construction of a new facility in the western section of HRY (in place of the Flower Market) to serve as its primary warehouse, distribution, and vehicle maintenance center, as well as the acquisition and/or lease and installation of machinery, equipment, furniture, and fixtures necessary to operate the Fresh Direct facility.
To facilitate IDA’s SEQRA review of the proposal, Fresh Direct submitted a State Environmental Assessment Form (2011 EAF). The 2011 EAF used the “net-increment” methodology, which analyzed the incremental differences between impacts of *609 the development approved in 1993 and the proposed Fresh Direct facility. It also referenced the updated data on environmental impacts that were presented in connection with the approved New York Post and FedEx proposals. The 2011 EAF concluded that the project was materially similar to uses proposed in the original Land Use Plan, would generate less vehicular traffic, and did not have the potential to have new, additional, or increased significant adverse environmental impacts.
After holding a public hearing, on February 14, 2012, IDA approved the Fresh Direct application and adopted an inducement resolution involving approximately $84 million in direct and indirect city tax subsidies and other financial assistance. IDA also issued a “Negative Declaration” stating that the Type I action[4] will not have a significant environmental impact under SEQRA or require further environmental review.
In June 2012, petitioners commenced this proceeding challenging IDA’s decision to approve the City subsidies and assistance to Fresh Direct, IDA’s issuance of the Negative Declaration, and the Empire State Development Corporation’s awarding of tax credits to Fresh Direct. When Supreme Court dismissed the petition in its entirety, this appeal ensued.
We now find that respondent satisfied its obligations under SEQRA. “ ‘[J]udicial review of a SEQRA determination is limited to determining whether the challenged determination was affected by an error of law or was arbitrary and capricious, an abuse of discretion, or was the product of a violation of lawful procedure’ ” (Matter of C/S 12th Ave. LLC v City of New York, 32 AD3d 1, 6 [1st Dept 2006], quoting Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow, 292 AD2d 617, 619 [2d Dept 2002], lv denied 98 NY2d 609 [2002]). “[T]he courts may not substitute their judgment for that of the agency for it is not their role to ‘weigh the desirability of any action or [to] choose among alternatives’ ” (Akpan v Koch, 75 NY2d 561, 570 [1990], quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]).
*610 Our review of the record establishes that the determination of IDA not to require a Supplemental Environmental Impact Study (SEIS) was not affected by an error of law, arbitrary and capricious, or an abuse of discretion (see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 232 [2007]; Matter of Kellner v City of N.Y. Dept. of Sanitation, 107 AD3d 529 [1st Dept 2013]; Matter of C/S 12th Ave. LLC, 32 AD3d at 7). Likewise, the record reflects that, as the lead agency, IDA identified the relevant areas of environmental concern related to the proposed action (including traffic, air quality and noise impact),[5] took the requisite “hard look” at them and, in its negative declaration, set forth a reasoned elaboration of the basis for its determination that a SEIS was not required (id.). Thus, Supreme Court should have declared that IDA’s issuance of a negative declaration did not violate SEQRA, was not arbitrary and capricious, and was not an abuse of discretion.
We find that the court correctly dismissed petitioners’ remaining causes of action seeking to invalidate the lease and sublease, and challenging Fresh Direct’s admission into the Excelsior Jobs Program. Although the second cause of action, seeking to invalidate the lease between HRYV and Fresh Direct LLC, is timely, it fails to properly plead a cause of action under State Finance Law § 123-b which applies only to proceedings challenging the actions of a state officer or employee or the expenditure of state funds (see Santora v Silver, 61 AD3d 621 [1st Dept 2009]). Petitioners’ allegations in the amended petition that the Department of Transportation was involved because it must pre-approve a modification of the Land Use Plan is insufficient to confer standing under the statute.
We have considered petitioners’ remaining arguments and find them unavailing.
Concur — Gonzalez, PJ., Tom, Renwick and Feinman, JJ.

. SEQRA, which is codified at Environmental Conservation Law § 8-0101 et seq., applies to all state and local agencies in New York (§ 8-0105 [3]; 6 NYCRR [Department of Environmental Conservation] 617.2 [c], [v], [ah]). Each agency must review any proposed action that comes before it to determine whether or not it may have a significant adverse environmental impact (6 NYCRR 617.7 [b] [3]). If the agency determines that one or more significant adverse effects may occur, then the project proponent must prepare an environmental impact statement (EIS) before a decision to proceed with the action can be made (6 NYCRR 617.7 [a] [1]). If the agency finds that no significant adverse effects will occur, then it adopts a “negative declaration” and the SEQRA process comes to an end (id. § 617.2 [y]).

. Respondent IDA is a public benefit corporation that offers financial incentive programs, including triple tax-exempt bond financing and/or tax benefits, to assist companies moving to or remaining in the City to acquire or create capital assets in an effort to retain existing jobs and create and attract new jobs.

. The relocation also included Fresh Direct’s trucking division, respondent UTF Trucking, Inc.

. Under SEQRA, actions are classified as Type I, Type II, or Unlisted. Type II actions are those that have been found not to have the potential for a significant impact, and thus are not subject to review under SEQRA (see 6 NYCRR 617.2). Classes of actions identified as “Type I” or “Unlisted” must be reviewed further under SEQRA to determine the potential for significant adverse environmental impacts. A Type I action means an action or class of actions that is more likely to have a significant adverse impact on the environment than other actions or classes of actions (6 NYCRR 617.4 [a]). Type I actions are listed in the statewide SEQRA regulations (id. § 617.4 [a]), or listed in any involved agency’s SEQRA procedures. The Type I list in section 617.4 contains numeric thresholds; any actions that will equal or exceed one or more of the thresholds would be classified as Type I (id.).

. Petitioner primarily argued that the environmental review of the project remained deficient with regard to traffic, air quality and noise impact in and around HRY.